IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SAVITA SHANKER,

    Plaintiff,

v.                                      CASE NO. 1:18-cv-197-MW-GRJ

UNIVERSITY OF FLORIDA
BOARD OF TRUSTEES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 12, Defendant University of Florida Board of Trustees' (BOT) Motion to Dismiss, to which Plaintiff has filed a response in opposition. ECF No. 13. For the reasons discussed below, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss be **GRANTED**.

### I.    Background

Plaintiff, proceeding *pro se*, initiated this lawsuit by filing a complaint purporting to allege employment discrimination under 42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964. ECF No. 1. The facts as alleged in the Complaint are as follows. Plaintiff Savita Shanker is an Asian American female of Indian national origin. She was employed by the

1

University of Florida (UF) as a scientist for twenty-two years before being terminated. *Id.* at 12. She joined UF's Interdisciplinary Center for Biotechnology Research (ICBR) in 1994. *Id.* The ICBR is a service lab that serves the scientific needs of UF's College of Medicine and Institute of Food and Agricultural Sciences, as well as scientists from other universities. *Id.*

Plaintiff is an expert in DNA sequencing, specifically "Sanger" sequencing and "NextGen" sequencing. *Id.* at 13. From 2011 through the date of her resignation on February 28, 2017, Plaintiff was employed as an Associate Scientist and Director of the "Sanger Sequencing Core Laboratory" in the ICBR. *Id.*

In 2006, Dr. Robert Ferl was appointed as director of ICBR. *Id.* Plaintiff was promoted to Associate Scientist in 2011 during Dr. Ferl's tenure as director. However, beginning in June 2013, Dr. Ferl began engaging in discriminatory and harassing behavior toward Plaintiff, which ultimately culminated in her termination. *Id.* at 13-14.

On June 11, 2013, Dr. Ferl called Plaintiff into his office to discuss a complaint made by Dr. Eric Triplett, Professor and Chair of Microbiology and Cell Science. *Id.* at 14. Three of Plaintiff's male colleagues were also present at the meeting, Plaintiff being the only female. *Id.* Dr. Ferl relayed

to Plaintiff Dr. Triplett's complaint that it was taking too long for the ICBR to copy certain data to an external hard drive. *Id.*

Plaintiff explained to Dr. Ferl that she had spoken with the individual from the Cyberinfrastructure department who was responsible for data copying, but he did not do the copying work as promised. *Id.* In response, Dr. Ferl became enraged and blamed Plaintiff because she was managing Dr. Triplett's project. *Id.* Dr. Ferl then projected e-mails from Plaintiff on a screen and ridiculed the "syntax" of her email correspondence, which made Plaintiff feel humiliated and embarrassed. *Id.*

Dr. Ferl then yelled at Plaintiff, "There are two strikes against you and one more strike and you will be out of this job." *Id.* Dr. Ferl's anger was "uncontrollable" and he used an expletive to describe Dr. Triplett. *Id.* Dr. Ferl's behavior in ridiculing and threatening Plaintiff in front of male colleagues made Plaintiff feel uncomfortable, and she believes Dr. Ferl singled her out in front of her male colleagues on account of her race and gender. *Id.* Plaintiff did not witness Dr. Ferl treat her male counterparts with similar disregard. *Id.*

The emotional distress Plaintiff experienced following the incident with Dr. Ferl resulted in a panic attack for which Plaintiff sought medical treatment. *Id.* Plaintiff was also forced to cancel a trip to a conference

scheduled for the day following the incident. *Id.* When Plaintiff later reached out to Dr. Triplett to ask him how she could improve her services, Dr. Triplett told Plaintiff he did not believe the delays in data processing were her fault, and he was "very happy" with her work. *Id.*

Following the incident on June 11, 2013, Dr. Ferl utilized various harassing tactics to force Plaintiff to resign. *Id.* at 14-15. Specifically, Dr. Ferl restricted Plaintiff's scientific activities to Sanger sequencing and reduced her role and responsibilities in Next-Gen sequencing, even though she had been heavily involved in the implementation and operation of Next-Gen sequencing in the past. *Id.* at 15. It is more professionally appealing for a scientist at the ICBR to work on Next-Gen sequencing rather than Sanger Sequencing exclusively because Sanger sequencing is transitioning to the commercial sector, while Next-Gen sequencing is an upcoming technology for campus-based labs. *Id.*

Dr. Ferl also dramatically reduced the size of Plaintiff's staff to perform the Sanger sequencing services, despite her repeated requests for additional personnel. *Id.* He sent Plaintiff to communications seminars to improve her communication skills, collected statements "against" her from terminated employees, and gave her poor annual evaluations, despite not giving her poor evaluation reports at any point during her prior nineteen

4

years of service. *Id.* Dr. Ferl also emailed Plaintiff on May 3, 2016, admonishing her for leaving a meeting early to use the restroom and conversing while another employee was speaking. *Id.*

On October 4, 2016, Plaintiff received a Notice of Non-Renewal from Dr. Ferl, notifying her that her employment would end the following year on October 3, 2017. *Id.* at 12. The notice also stated that Plaintiff's services will not be needed because the ICBR is closing the Sanger sequencing operations at UF. *Id.*

According to Plaintiff, the closing of the Sanger sequencing operations is not a justified reason for non-renewal of Plaintiff's contract because she is an expert in Next-Gen sequencing and is capable of providing other services offered by the ICBR. *Id.* Rather, discontinuation of Sanger sequencing operations at the ICBR is a pretext for racial and gender discrimination in terminating her. *Id.* at 13. Plaintiff resigned from her position at UF on February 28, 2017. ECF No. 13. She filed a charge of discrimination against Defendant with the EEOC on December 14, 2017[1], asserting discrimination based on her race, gender, and national origin.

---

[1] Plaintiff signed her EEOC charge on December 14, 2017, and it was "received" on December 20, 2017. However, owing to Plaintiff's *pro se* status, the date of signing is the operative date for the purposes of this Motion.

5

ECF No. 1 at 17. The EEOC issued its Dismissal and Notice of Rights, also known as a "Right-to-Sue" letter, on June 29, 2018. *Id.* at 18.

Plaintiff filed the instant lawsuit on September 27, 2018, asserting unlawful termination based on discrimination, retaliation, and hostile work environment. *Id.* at 6. She seeks damages based on lost wages, retirement income, health benefits, emotional pain and suffering, loss of her professional career, attorney's fees, and costs of suit. *Id.* at 9-10. She also seeks re-employment with Defendant. *Id.* at 10.

Defendant moved to dismiss on two grounds: first that Plaintiff's claims are time-barred because she failed to file her charge of discrimination with the EEOC within the mandatory 300-day statute of limitations required by Title VII; and second because the complaint does not contain a short and plain statement showing Plaintiff is entitled to relief under Fed. R. Civ. P. 8(a). ECF No. 12 at 4-6. In the alternative, Defendant moves for a more definite statement. *Id.* at 6.

## II.   Legal Standard

Determining whether a complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief may be granted turns on whether the plaintiff has alleged sufficient plausible facts to support her claims. *Bell Atl. Corp. v. Twombly*,

6

550 U.S. 544 (2007). As the Supreme Court held in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 555.

*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009). To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." *Id.* "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Nevertheless, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[A] *pro se* complaint, however inartfully pleaded, must

be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Id.* (quoting *Estelle*, 429 U.S. at 106).

### III.    Time-bar

To file a claim for discrimination under Title VII, a plaintiff must first exhaust her administrative remedies, beginning with the filing of a timely charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). It is Plaintiff's burden to establish she filed a timely charge of discrimination. *See Jordan v. City of Montgomery*, 283 F. App'x 766 (11th Cir. 2008) (citing *Jackson v. Seaboard Coast Line R. R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)). Because Florida is a deferral state that prohibits discriminatory employment practices under state law, a claimant must file an employment discrimination charge with the EEOC within 300 days of the last discriminatory act. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002); 42 U.S.C. § 2000e-5(e)(1).

In the case of termination from employment, the filing period "begins to run from a final decision to terminate the employee," i.e., the date the employee receives unequivocal notice of termination. *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201 (11th Cir. 2003) (quotation omitted), (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n. 19 (11th Cir. 1996));

*see also Liu v. University of Miami*, 138 F. Supp. 3d 1360, 1369-1370 (S.D. Fla. 2015) (the law is clear in the university context that it is the date of being advised of the termination that begins the clock for timely filing an EEOC charge).

It is undisputed that Plaintiff received a Notice of Non-Renewal on October 4, 2016, notifying her that her employment would terminate on October 3, 2017, pursuant to university regulations. ECF No. 1 at 12; ECF No. 12 at 2; ECF No. 13 at 1. Therefore, Plaintiff was required to file her EEOC charge within 300 days of October 4, 2016—no later than July 31, 2017. Plaintiff did not file her EEOC charge until December 14, 2017. ECF No. 1 at 17; ECF No. 12-2 at 1; ECF No. 13 at 2.[2] Plaintiff's claims are time-barred because she failed to file her charge within the mandatory 300-day statute of limitations required by Title VII.

In both her Complaint form and her EEOC charge, Plaintiff states that the discrimination against her occurred through the date of her resignation,

---

[2] In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 875 (11th Cir. 2016) (citing *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)). The EEOC charge, appended to both the Plaintiff's Complaint and Defendant's Motion to Dismiss, is central to the Title VII claims, and its authenticity is unquestioned.

which was February 28, 2017.[3] However, the facts as alleged in the Complaint, taken as true for the purposes of this Motion, do not support a finding that the limitations period commenced on her resignation date.

Plaintiff alleges that, following the incident on June 11, 2013, Dr. Ferl utilized various strategies to force her resignation. However, even if this conduct—aimed at forcing Plaintiff's resignation—continued through Plaintiff's date of her resignation on February 28, 2017, it is of no consequence because Plaintiff already had received unequivocal notice of her termination on October 4, 2016.

In her response to the Motion, Plaintiff contends that it is untenable that the Defendant expected her to file a charge of employment discrimination by July 31, 2017, while offering her continued employment through October 3, 2017. ECF No. 13 at 1. But the requirement that Plaintiff file her charge with the EEOC within 300 days of her notice of termination is a statutory requirement, not a deadline imposed by the defendant.

Finally, Plaintiff contends that the charge must have been timely because the EEOC accepted it for filing and issued a Right-to-Sue letter. *Id.* at 2. The fact that the EEOC processed plaintiff's charge, however, does

---

[3] The EEOC charge bears the date Feb. 28, 2017, ECF No. 1 at 17, and Plaintiff's complaint form alleges that discrimination continued through February 2017. *Id.* at 6.

not preclude a finding that it was filed outside the 300-day charge filing period, which is mandated by statute.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss, ECF No. 12, should be **GRANTED** and Plaintiff's Complaint should be **DISMISSED**.

**IN CHAMBERS** at Gainesville, Florida, this 22nd day of May 2019.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636**.